WISE, Presiding Judge.
The appellee, Travis German Henry, was indicted for unlawful possession of a controlled substance. He moved to suppress evidence a law enforcement officer seized during a patdown search. After conducting a hearing, the trial court granted Henry’s motion to suppress. This appeal by the State followed.
During the suppression hearing, Officer C. Livingston of the Montgomery Police Department testified that, on December 17, 2008, he stopped Henry’s vehicle for failing to signal a turn. Henry pulled into a service station and stopped his vehicle and, even though Livingston was approximately one car length behind him, Henry got out of his vehicle and started walking away from it toward a convenience store. Livingston testified that he told Henry to go back to his vehicle and that, as he walked toward the vehicle, Henry kept fumbling with his left pocket. He also testified that he thought Henry was getting ready to run.
Livingston testified that he did not know if Henry had a weapon, that he instructed Henry to place his hands on his vehicle, and that he started patting Henry down for his safety. He also testified that, while he was patting him down, Henry “kept moving his left hand to make me believe that it was a weapon at that time.” (R. 7.) Because of the fumbling, and before he completed the patdown, Livingston asked Henry if there was anything he needed to know. At that point, Henry said, “ ‘[M]an, I ain’t going to lie. I got some dope in my pocket.’” (R. 4.) Livingston then retrieved what appeared to be cocaine from Henry’s pocket and placed Henry under arrest.
At the end of the suppression hearing, the following occurred:
“THE COURT: Why were you patting him down?
“THE WITNESS: For my safety.
“THE COURT: So how does dope in his pocket interfere with your safety?
“THE WITNESS: Because as he was walking back toward the vehicle where I was at, he was steady reaching into his pocket.
“THE COURT: I know, but if you had patted his pocket, you would have discovered what?
“THE WITNESS: I didn’t finish patting him down. I was patting — I didn’t pat his whole body. I didn’t get to that pocket just yet.
“THE COURT: I’m saying if you had patted that pocket, do you think you would have felt something like a weapon?
“THE WITNESS: Yes. If I would have patted that pocket, yes.
“THE COURT: What weapon would you have found?
“THE WITNESS: Anything that could harm me.
“THE COURT: I’m just saying. Did he have a weapon?
“THE WITNESS: I didn’t finish the pat down.
“THE COURT: And I’m saying, why didn’t you?
“THE WITNESS: Why didn’t I?
“THE COURT: Right.
“THE WITNESS: Because I was—
“THE COURT: I thought you were concerned about your safety.
“THE WITNESS: Correct.
“THE COURT: So seem like to me if you were concerned about your safety, you would have completed the pat down. Am I right?
*447 “THE WITNESS: Correct.”
(R. 8-9.)
The State argues that the trial court erroneously granted Henry’s motion to suppress the evidence law enforcement officers seized during a patdown search. Specifically, it contends that Livingston was justified in conducting a patdown search for weapons and that, once Henry admitted that he had drugs in his pocket, Livingston had probable cause to search him and arrest him for unlawful possession of a controlled substance.
In State v. Hill, 690 So.2d 1201, 1203-04 (Ala.1996), the Alabama Supreme Court stated the following with regard to standards of review to be applied when reviewing a trial court’s ruling on a motion to suppress:
“As a preliminary matter, we note that there has been some debate regarding the applicable standard of appellate review. In its unpublished memorandum, the Court of Criminal Appeals showed great deference to the trial court’s decision to suppress the evidence of the cocaine and marijuana. It stated:
“ ‘[A] trial court’s ruling on a motion to suppress will not be disturbed unless it is “palpably contrary to the weight of the evidence.” Patterson v. State, 659 So.2d 1014 (Ala.Cr.App.1995). The trial court is in a far better [sic] than this court to rule on the merits of a motion to suppress. Sullivan v. State, 23 Ala.App. 464, 127 So. 256 (1930). The trial court’s ruling [on] the motion to suppress was not palpably wrong.’
“The State contends that the deference of the Court of Criminal Appeals to the judgment of the trial court was unwarranted. It claims that an appellate court should review de novo the trial court’s finding that ‘reasonable suspicion’ was lacking, because the facts in the case are not in dispute. We agree.
“The trial judge made his ruling following a hearing at which he heard oral testimony only from Officer Bailey. We stated in Ex parte Agee, 669 So.2d 102 (Ala.1995):
“ ‘Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala.1995). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala.1994).’
“669 So.2d at 104. Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.’ Stiles v. Broum, 380 So.2d 792, 794 (Ala.1980) (citations omitted).”
(Emphasis added.)
In R.W. v. State, 913 So.2d 505, 512-13 (Ala.Crim.App.2005), this court addressed the issue of patdown searches as follows:
“ ‘[I]n Terry v. Ohio, [392 U.S. 1 (1968) ], the United States Supreme Court held that a limited search for weapons was partially justified by the need to protect the arresting officer from assault with a concealed weapon. “In determining whether a police officer had a basis for initiating a frisk, there are two matters to be consid *448 ered: whether the officer had a sufficient degree of suspicion that the party frisked was armed and dangerous; and whether the officer was rightfully in the presence of the party frisked so as to be endangered if that person was armed.” LaFave, Search & Seizure § 9.4(a) (2d ed. 1987). By concluding that the officer had sufficient articulable suspicion to make the investigatory stop, we also conclude that the officer was rightfully in the presence of the appellant, being the party frisked. Moreover, the United States Supreme Court stated in Terry v. Ohio, supra:
“‘“The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Cf. Beck v. Ohio, 379 U.S. 89, 91 [85 S.Ct. 223, 224, 13 L.Ed.2d 142] (1964); Brinegar v. United States, 338 U.S. 160, 174-176 [69 S.Ct. 1302, 1310-1311, 93 L.Ed. 1879] (1949); Stacey v. Emery, 97 U.S. 642, 645 [24 L.Ed. 1035] (1878). And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or ‘hunch,’ but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. Cf. Brinegar v. United States supra.'”
“ ‘392 U.S. at 27, 88 S.Ct. at 1883.
“ ‘ “We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous; ... he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.”
‘“Terry v. Ohio, 392 U.S. at 30, 88 S.Ct. at 1884.’
“State v. Richardson, 616 So.2d 400, 402-03 (Ala.Crim.App.1993).
“Here, Officer Drummer and other officers received a dispatch regarding an anonymous caller who reported that several young men were using illegal drugs on the porch of a residence in southwest Birmingham. The residence was in a high-crime area specifically known as an area where illegal drug activity took place; there had also been several recent burglaries in the area. When Officer Drummer and the other officers arrived, they saw several young men on the front porch of the residence as the anonymous caller described. All of the men, including R.W., were fidgeting and appeared nervous, and R.W., at one point, had his hands inside his shirt. While conducting interviews with the men, one officer discovered a ‘roach’ in a flowerbed near the porch. Considering the totality of the circumstances, we conclude that there was reasonable suspicion that R.W. was involved in criminal activity and that R.W. may have been armed so as to justify the Terry stop and frisk. Although Officer Drummer testified that he did not believe, when he initiated the patdown, that R.W. was armed, Officer Drummer’s subjective beliefs are irrelevant in determining reasonable suspicion. ‘Reasonable suspicion, like probable cause, is measured using an objective standard.’ Williams [v. State], 716 So.2d [753] at 756 *449 [ (Ala.Crim.App.1998) ]. Considering the circumstances, a reasonably prudent person in Officer Drummer’s position would have been justified in believing that his safety as well as the safety of his fellow officers was in danger. See, e.g., Hall v. State, 897 So.2d 410 (Ala.Crim.App.2003), and Smith v. State, 884 So.2d 3 (Ala.Crim.App.2003). See also Hilliard v. Commonwealth, 17 Va.App. 23, 26, 434 S.E.2d 911, 913 (1993) (‘Suspicion of illegal drug possession and distribution is a circumstance which gives rise to an inference of dangerousness.’).”
This court has also held that
“ ‘not all stops call for a frisk.’ 3 La-Fave § 994, p. 115. A police officer may conduct a reasonable search of a person for weapons “where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.’ Terry, 392 U.S. at 27, 88 S.Ct. at 1883.
“In determining whether a frisk is justified, two factors must be considered:
“ ‘In determining whether a police officer had a basis for initiating a frisk, there are two matters to be considered. One concerns whether the officer had a sufficient degree of suspicion that the party frisked was armed and dangerous, and the other whether the officer was rightfully in the presence of the party frisked so as to be endangered if that person was armed.’ 3 LaFave at § 9.4(a), p. 109.”
Worthy v. State, 473 So.2d 634, 638 (Ala.Crim.App.1985). Finally,
“[wjhether there is probable cause to merit a warrantless search and seizure is to be determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). ‘Probable cause exists where all the facts and circumstances within the officer’s knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched.’ Sheridan v. State, 591 So.2d 129, 130 (Ala.Crim.App.1991).”
State v. Stallworth, 645 So.2d 323, 325 (Ala.Crim.App.1994).
Based on Henry’s actions when he got out of and walked away from his vehicle, and his continued fumbling in his pocket, Livingston had reason to believe that Henry was armed and dangerous. Therefore, he was justified in performing a pat-down search for officer safety.
The trial court appears to have based its decision to grant the motion to suppress on the fact that Livingston did not complete the patdown search and its conclusion that, therefore, he must not have been truly concerned about his safety. However, Livingston testified that, because Henry continued to fumble with his pocket during the patdown search, as if trying to make him think he had a weapon, he asked Henry if there was anything he needed to know about. At that point, and before Livingston completed the patdown search, Henry admitted that he had drugs in his pocket, and Livingston retrieved the drugs from Henry’s pocket and arrested him. Henry’s admission that he had drugs in his pocket gave Livingston probable cause to reach into the pocket to retrieve the drugs. See Stallworth, supra.
For the reasons set forth herein, Livingston had reasonable suspicion to conduct a *450 patdown search of Henry for officer safety. When Henry admitted, during that pat-down search, that he had drugs in his pocket, that reasonable suspicion ripened into probable cause for Livingston to retrieve the drugs and arrest him for unlawfully possessing them. Therefore, the trial court erred in granting Henry’s motion to suppress. Accordingly, we reverse the trial court’s judgment and remand this case for proceedings that are consistent with this opinion.
REVERSED AND REMANDED.
WELCH, WINDOM, KELLUM, and MAIN, JJ., concur.